UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
                                          :
JELANI HENRY,                             :
                         Plaintiff,       :       Civ.
                                          :
          -against-                       :
                                          :       COMPLAINT AND
THE CITY OF NEW YORK, POLICE              :       JURY DEMAND
COMMISSIONER WILLIAM J. BRATTON,          :
DETECTIVE WILLIE MOREE, Shield 6140,      :
DETECTIVE MICHAEL LANGELLA, Shield 0715,  :
DETECTIVE KEVIN BRADY, Shield 0646,       :
DETECTIVE ANTHONY PASQUARIELLO, Shield    :
2474, DETECTIVE CHRISTOPHER KILLEN,       :
POLICE OFFICER MATTHEW HALL, Shield       :
7311, and POLICE OFFICER ELMER LOPEZ,     :
Shield 8270,                              :
                                          :
                         Defendants.      :
                                          :
------------------------------------------X

          Plaintiff, by his attorneys, ROTHMAN, SCHNEIDER, SOLOWAY &

STERN, LLP, alleges as follows:

                    PRELIMINARY STATEMENT

          1.   This is an action for damages sustained by a citizen of

the United States of America against employees of the New York City

Police Department and New York County District Attorney's Office

who violated the civil and constitutional rights of the plaintiff

by falsely arresting and imprisoning him from April 20, 2012

through November 7, 2013; against the Commissioner of the New York

City Police Department, WILLIAM J. BRATTON, the official

responsible for the training and supervision of New York City

Police Officers, for his individual failure to take corrective

action and to implement meaningful procedures to prevent generally unlawful and unconstitutional conduct by police officers against citizens; and against the CITY OF NEW YORK, which is sued as a person pursuant to 42 U.S.C. §§ 1983 and 1988.

<u>JURISDICTION</u>

2.    Plaintiff institutes these proceedings and invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1343 to obtain costs of suit, including reasonable attorney's fees, and to recover damages suffered by plaintiff and caused by defendants' violation of his rights as guaranteed by the Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States, and by federal statutory law, particularly 42 U.S.C. § 1983.

3.    This Court also has jurisdiction of this action pursuant to 28 U.S.C. § 1331 in that the matter in controversy arises under the Fourth, Fifth, Eighth, and Fourteenth Amendments of the Constitution of the United States.

4.    The violation of plaintiff's rights alleged herein occurred within the City, County, and State of New York.

<u>PARTIES</u>

5.    Plaintiff, JELANI HENRY, is a citizen of the United States of America and was at all times relevant herein an individual residing in the City, County and State of New York.

6.    Defendant, WILLIAM J. BRATTON, was at all relevant times the duly appointed, qualified, and acting Commissioner of the New

York City Police Department.   As such, he is the highest
supervisory official of the New York City Police Department and is
responsible for the training and supervision of police personnel.
He is also responsible for enforcing the regulations and policies
of the New York City Police Department and for ensuring that New
York City Police Department employees obey, employ, and implement
regulations and policies.  At all relevant times, he was acting in
his capacity as an agent, servant, and employee of the defendant
City of New York.   He is sued individually and in his official
capacity.

7.   Detectives WILLIE MOREE, MICHAEL LANGELLA, KEVIN BRADY,
CHRISTOPHER KILLEN, and ANTHONY PASQUARIELLO are detectives
employed by the New York City Police Department, and at all
relevant times herein were acting in the capacity of agents,
servants, and employees of the defendant, CITY OF NEW YORK.   They
are each sued individually and in their official capacity.

8.   Police Officers MATTHEW HALL and ELMER LOPEZ are police
officers employed by the New York City Police Department and at all
relevant times herein were acting in the capacity of agents,
servants, and employees of the defendant, CITY OF NEW YORK.   They
are each sued individually and in their official capacity.

9.   Defendant, CITY OF NEW YORK is a municipal entity
authorized and existing pursuant to and by virtue of the laws of
the State of New York.   It is authorized by law to maintain a

police department which acts as its agent in the area of law enforcement.

10. At all times relevant herein, the defendants, WILLIE MOREE, MICHAEL LANGELLA, KEVIN BRADY, CHRISTOPHER KILLEN, ANTHONY PASQUARIELLO, MATTHEW HALL and ELMER LOPEZ, and their agents, assistants, and employees, acted pursuant to the policies, regulations or decisions officially adopted or promulgated by agents of the New York City Police Department, whose acts may fairly be said to represent official policy or governmental custom of the New York City Police Department and the CITY OF NEW YORK.

### FACTUAL ALLEGATIONS

11. On March 5, 2012, at approximately 8:00 a.m., in the vicinity of 2407 Eighth Avenue in the City, County, and State of New York, two individuals were shot by an assailant who fled the scene (the "March 5 Shooting").

12. Both victims of the March 5 Shooting were hospitalized and both survived the assault.

13. Plaintiff, JELANI HENRY, had no involvement and no culpability in the March 5 Shooting, and was not present at the location when it occurred.

4

14.   On April 10, 2012, an individual identified plaintiff in a police arranged photo array as a person he observed running from the location of the shooting with a gun in his hand.[1]

15.   On April 20, 2012, at approximately 1:00 p.m., JELANI HENRY, was lawfully in the home of his girlfriend in the Parkchester section of the Bronx, when he was arrested for the March 5 Shooting by defendant, WILLIE MOREE, and other officers and detectives of the New York City Police Department.

16.   WILLE MOREE was the lead detective assigned to investigate the March 5 Shooting.

17.   On April 20, 2012, the witness who had previously identified a photograph of plaintiff as running from the location of the shooting with a gun again identified plaintiff in a line-up at the 32nd Police Precinct.

18.   Plaintiff made a videotaped statement to Assistant District Attorney Mary Weisgerber and ANTHONY PASQUARIELLO on the day of his arrest during which he denied any involvement or culpability in the March 5 Shooting.

19.   Throughout the pendency of the case, plaintiff maintained his innocence.

---

[1]

Upon information and belief, despite continuing demands by plaintiff's defense lawyer, the identity of the witness who identified plaintiff has never been disclosed by the New York City Police Department or the New York County District Attorney's Office, and is unknown to plaintiff.

20.   Following his arrest, plaintiff was denied bail and remained in detention from April 20, 2012 until on or about November 4, 2013, at which time he was ordered released by the Presiding Judge in the case.

21.   Plaintiff's release in November, 2013 occurred over the objection of the Manhattan District Attorney's Office.

22.   On or about May 13, 2014, all charges against the defendant were dismissed in their entirety upon motion of the Manhattan District Attorney's Office.

23.   At the time of plaintiff's arrest, the defendants knew or should have known that plaintiff was not the perpetrator of the March 5 Shooting, and had no culpability for the crime.

24.   At the time of plaintiff's arrest, the defendants knew or should have known that the photo identification (April 10, 2012) and line-up identification (April 20, 2012) were both inaccurate, flawed, biased, and unreliable.

25.   At the time of plaintiff's arrest, the defendants knew or should have known that the evidence against plaintiff was insufficient to provide legal cause to arrest him.

26.   At the initiation of plaintiff's detention, the defendants knew or should have known that the evidence against plaintiff was insufficient to provide legal and just reason to detain him.

27.    The defendants did not possess legally sufficient information and evidence to justify plaintiff's eighteen month detention.

28.    The defendants ignored and mis-handled exculpatory information which would lead a reasonable and prudent investigator to conclude plaintiff was not the perpetrator of the March 5 Shooting.

29.    The defendants failed to make a full and complete presentation of the facts to the grand jury, including failing to present exculpatory information to the grand jury.

30.    Defendants deviated egregiously from police procedure in investigating the March 5 Shooting.

31.    As a consequence of defendants' egregious deviation from police procedure, plaintiff was arrested and detained for an extended period of time for allegedly committing the March 5 Shooting.

32.    Defendants failed in their duty to utilize and pursue information and leads supplied to them by plaintiff, defense counsel, defendant's family, and police informants which would show plaintiff was not the perpetrator of the March 5 Shooting.

33.    Throughout the period of plaintiff's detention, the defendants possessed credible information that plaintiff was not the perpetrator of the March 5 Shooting.

34.    The defendants withheld exculpatory information from plaintiff's counsel and plaintiff that they had a legal obligation to disclose.

35.    The defendants withheld exculpatory information from the district attorney's office that they were under an obligation to disclose.

36.    The defendants failed to properly document material exculpatory information during the course of investigating the March 5 Shooting.

37.    The defendants failed to properly document material law enforcement steps and events during the investigation of the March 5 Shooting.

38.    Plaintiff continued to be detained for many months after information reliably showed that he was not the perpetrator of the March 5 Shooting.

39.    Approximately one year after plaintiff's arrest, defendant CHRISTOPHER KILLEN telephoned plaintiff's mother, Alethea Henry, and told her, in sum and substance, that he and other law enforcement persons knew plaintiff did not commit and was not involved in the March 5 Shooting.

40.    During his telephone conference with plaintiff's mother, CHRISTOPHER KILLEN stated that the March 5 Shooting was "still being investigated."

41. After CHRISTOPHER KILLEN's phone contact with plaintiff's mother, plaintiff continued to be detained for an period of many months.

42. During his detention, the District Attorney's Office was never ready for trial.

43. In arresting plaintiff for the March 5 Shooting, and permitting his extended detention, the defendants acted in bad faith and without sufficient legal cause or justification.

## Plaintiff's Damages

44. As a result of his unlawful arrest, detention, and malicious prosecution, plaintiff JELANI HENRY was incarcerated for the period of April 20, 2012 through November 4, 2013, a total of eighteen months, twelve days.

45. During his improper and wrongful detention, the plaintiff, who had never before been incarcerated and has no criminal record, was attacked by other inmates, and forced continually to fight to defend himself, and to endure many months in isolation and punitive segregation.

46. During this time, plaintiff was repeatedly threatened and attacked by other inmates.

47. As a direct result of his unlawful arrest and prosecution, plaintiff was prevented from continuing educational courses in carpentry in which he was enrolled.

48.   Plaintiff has suffered economic losses as a result of his unlawful arrest, prosecution, and detention, including but not limited to, years of lost wages and educational opportunities.

49.   Apart from deprivation of liberty and economic losses, plaintiff also suffered severe emotional distress and psychological damage as a result of defendants' unlawful actions.

### FEDERAL CAUSES OF ACTION

FALSE ARREST AND IMPRISONMENT PURSUANT TO 42 U.S.C. § 1983

50.   Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs numbered "1" through "49" with the same force and effect as if fully set forth herein.

51.   As a result of defendant's aforesaid conduct, plaintiff was subjected to an illegal, improper and false arrest by the defendants and was taken into custody and caused to be falsely imprisoned, confined, incarcerated and prosecuted by the defendants in criminal proceedings, without probable cause and without his consent.

52.   As a result of the foregoing, plaintiff's liberty was restricted for an extended period of time, he lived in constant fear for his personal safety, he was attacked by other inmates, he was physically and emotionally injured, repeatedly searched, strip-searched and humiliated, and suffered substantial economic loss, psychological injury, loss of liberty, and damage to his reputation.

10

53.  The above described actions and omissions, engaged in under color of state authority by the defendants, including defendant CITY OF NEW YORK, deprived the plaintiff of rights secured to him by the Constitution of the United States, including, but not limited to, his Fourth and Fourteenth Amendment right to bodily integrity, and to be free from false arrest, unlawful imprisonment, and unlawful seizure of his person.

## MALICIOUS PROSECUTION PURSUANT TO 42 U.S.C. § 1983

54.  Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "53" with the same force and effect as if fully set forth herein.

55.  Collectively and individually, defendants WILLIE MOREE, MICHAEL LANGELLA, KEVIN BRADY, CHRISTOPHER KILLEN, ANTHONY PASQUARIELLO, and POLICE OFFICERS MATTHEW HALL and ELMER LOPEZ, misrepresented and falsified evidence before prosecutors in the New York County District Attorney's office.

56.  Collectively and individually, defendants WILLIE MOREE, MICHAEL LANGELLA, KEVIN BRADY, CHRISTOPHER KILLEN, ANTHONY PASQUARIELLO, and POLICE OFFICERS MATTHEW HALL and ELMER LOPEZ, did not make a complete and full statement of material facts to prosecutors in the New York County District Attorney's office.

57.  Collectively and individually, defendants WILLIE MOREE, MICHAEL LANGELLA, KEVIN BRADY, CHRISTOPHER KILLEN, ANTHONY PASQUARIELLO, and POLICE OFFICERS MATTHEW HALL and ELMER LOPEZ,

withheld exculpatory evidence from prosecutors in the New York County District Attorney's office.

58. Collectively and individually, defendants WILLIE MOREE, MICHAEL LANGELLA, KEVIN BRADY, CHRISTOPHER KILLEN, ANTHONY PASQUARIELLO, and POLICE OFFICERS MATTHEW HALL and ELMER LOPEZ, misrepresented and falsified evidence before the grand jury.

59. Collectively and individually, defendants WILLIE MOREE, MICHAEL LANGELLA, KEVIN BRADY, CHRISTOPHER KILLEN, ANTHONY PASQUARIELLO, and POLICE OFFICERS MATTHEW HALL and ELMER LOPEZ, did not make a complete and full statement of facts to the grand jury.

60. Collectively and individually, defendants WILLIE MOREE, MICHAEL LANGELLA, KEVIN BRADY, CHRISTOPHER KILLEN, ANTHONY PASQUARIELLO, and POLICE OFFICERS MATTHEW HALL and ELMER LOPEZ, withheld exculpatory evidence from the grand jury.

61. Collectively and individually, defendants WILLIE MOREE, MICHAEL LANGELLA, KEVIN BRADY, CHRISTOPHER KILLEN, ANTHONY PASQUARIELLO, and POLICE OFFICERS MATTHEW HALL and ELMER LOPEZ, were involved in the arrest and initiation of criminal proceedings against plaintiff, JELANI HERNRY.

61. The defendants lacked probable cause to initiate criminal proceedings against plaintiff.

62. Collectively and individually, defendants WILLIE MOREE, MICHAEL LANGELLA, KEVIN BRADY, CHRISTOPHER KILLEN, ANTHONY PASQUARIELLO, and POLICE OFFICERS MATTHEW HALL and ELMER LOPEZ,

acted with malice in initiating criminal proceedings and arresting plaintiff.

63. The defendants lacked sufficient legal cause to continue criminal proceedings against plaintiff JELANI HENRY.

64. The defendants acted with malice in continuing criminal proceedings against plaintiff for in excess of two years.

65. The defendants misrepresented and falsified evidence throughout all phases of the criminal proceeding.

66. Notwithstanding the unlawful and malicious actions of the defendants, all criminal proceedings were terminated in plaintiff's favor on May 13, 2014 when the charges were dismissed.

67. As a result of the foregoing, plaintiff has been subjected to a baseless prosecution, his liberty was restricted for an extended period of time, he was put in fear for his safety and attacked by other inmates, he was physically and emotionally injured, repeatedly strip-searched and humiliated, and suffered substantial economic and psychological damage and losses and permanent damage to his reputation.

## UNLAWFUL SUSTAINED DETENTION PURSUANT TO 42 U.S.C. § 1983

68. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "67" with the same force and effect as if fully set forth herein.

69. The above-described actions and conduct of defendants, including but not limited to, ignoring and/or mis-handling exculpatory evidence, ignoring and/or mis-handling the identity of witnesses who had provided exculpatory information, and concealing, suppressing, and/or failing to turn over exculpatory evidence to the prosecutor, all engaged in under color of law, violated plaintiff's right to be free from sustained detention after it was known, or should have been known, that he was legally entitled to release.

70. Plaintiff's right to be free from overly lengthy detention was caused by defendants' egregious deviations from police procedure in connection with the investigation of the March 5 Shooting.

71. Plaintiff's eighteen months of detention based upon insufficient evidence was excessive.

72. The defendants knew or should have known that the information on which plaintiff continued to be detained was legally insufficient to support such detention.

73. That plaintiff's Fourth and Fourteenth Amendment rights were violated by such excessive detention.

<u>PENDENT CAUSE OF ACTION FOR MALICIOUS PROSECUTION</u>

74. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "73" with the same force and effect as if fully set forth herein.

14

75.   Heretofore, on or about July 22, 2014, plaintiff caused a written and duly verified Notice of Claim to be filed with the proper agents of the City of New York in accordance with the provisions of the General Municipal Law of the State of New York. Plaintiff's claim has not been adjusted or otherwise disposed of since that time.

76.   Plaintiff's arrest of April 20, 2012 was the result of maliciously false reports made by the police and presented to the District Attorney by the defendants with the intent to cause plaintiff to be arrested.

77.   In reliance upon the deliberately false and perjured reports of such individual defendants, and by reason of the withholding by such defendants of the true facts relating to plaintiff's innocence, plaintiff was arrested, and the District Attorney's Office prosecuted him.

78.   Plaintiff was arrested on April 20, 2012 wholly and solely due to false and spurious charges lodged by the defendants.

79.   All criminal charges were dismissed on May 13, 2014.

80.   By reason of the aforesaid arrest and malicious prosecution, plaintiff has been injured and has suffered loss of liberty, and great mental distress.

81.   By reason of the foregoing, plaintiff has been damaged by the defendants' acts and conduct in the sum of Ten Million ($10,000,000.00) Dollars.

CAUSE OF ACTION AGAINST
POLICE COMMISSIONER AND MUNICIPALITY

82.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "81" with the same force and effect as if fully set forth herein.

83.   Defendants CITY OF NEW YORK and WILLIAM J. BRATTON knew or should have known of the propensity of named detectives and police officers to engage in the illegal and wrongful acts detailed above and/or as a matter of policy and practice, have with deliberate indifference, failed to take steps to uncover and/or correct such conduct.  Upon information and belief, defendants CITY OF NEW YORK and WILLIAM J. BRATTON had prior notice of the propensities of the named detectives and officers, but took no adequate steps to train them, correct their abuses of authority, or to discourage their unlawful use of authority.

84.   Acting under color of law, by and through the policy-makers of the CITY OF NEW YORK, and pursuant to official policy or custom and practice, the CITY OF NEW YORK intentionally, knowingly, recklessly, or with deliberate indifference to the rights of the inhabitants of the CITY OF NEW YORK, failed to effectively screen, hire, train, instruct, supervise, control and discipline, on a continuing basis, their police officers, including the defendant police officers herein, for their  unlawful propensity, including fabricating criminal charges and falsely swearing to criminal complaints against citizens; and for their failure to protect

16

citizens from unconstitutional conduct of other police officers, thereby permitting and allowing the individual defendants herein to be in a position to cause plaintiff injury and violate plaintiff's federal and state constitutional rights, and/or to permit these actions to take place without plaintiff's knowledge or consent.

85.  On information and belief, the defendant detectives and police officers herein have been the subject of prior civilian and departmental complaints of misconduct that gave notice to, or should have given notice to, the defendant CITY OF NEW YORK and the New York City Police Department that the defendants herein were likely to engage in conduct that would violate the civil and constitutional rights of the public, such as the conduct complained of by the plaintiff herein.  The CITY OF NEW YORK had knowledge of or, had it diligently exercised its duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs that were done, as heretofore alleged, or other unlawful or unconstitutional acts were going to be committed. Defendant CITY OF NEW YORK had the power, authority and duty to prevent or aid in preventing the commission of said wrongs, could have done so, and intentionally, knowingly, recklessly or with deliberate indifference to the rights of the inhabitants of the CITY OF NEW YORK, failed to do so.

86.  On information and belief, defendant CITY OF NEW YORK and the New York City Police Department maintained an inadequate

structure for risk containment and stress management relative to its police officers, and failed to create proper means of containing such risk and managing such stress. On information and belief, such structure was deficient at the time of selection of police officers, and thereafter during their employment, in its ability to evaluate and exchange information within the command structure about the performance of individual police officers; in its training of supervisory personnel to effectively and adequately evaluate performance of an officer; and in its ability to otherwise put the command structure on notice that an individual or individuals were at significant levels of risk to the public at large or to specific segments thereof. The effect of this was to permit police officers of the New York City Police Department to function at levels of significant and substantial risk to the public in general.

87. As a result of the foregoing conscious policies, practices, customs and/or usages, defendant CITY OF NEW YORK and the New York City Police Department have permitted and allowed the employment and retention of individuals as police officers whose individual circumstances place the public or segments thereof at substantial risk of being the victims of violent or racially motivated behavior. Such policies, practices, customs and/or usages are a direct and proximate cause of the conduct alleged

herein and are otherwise a direct and proximate cause of the injuries to plaintiff, JELANI HENRY.

88.   As a result of the foregoing, plaintiff was deprived of liberty, sustained emotional injuries, was subject to great humiliation, and was otherwise harmed, damaged and injured.

### NEGLIGENT HIRING, SCREENING, RETENTION SUPERVISION AND TRAINING

89.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "88" with the same force and effect as if fully set forth herein.

90.   The defendant CITY OF NEW YORK negligently hired, screened, retained, supervised and trained defendants WILLIE MOREE, MICHAEL LANGELLA, KEVIN BRADY, CHRISTOPHER KILLEN, ANTHONY PASQUARIELLO, MATTHEW HALL and ELMER LOPEZ.  The acts and conduct of the defendants were the direct and proximate cause of damage to plaintiff, JELANI HENRY, and violated plaintiff's statutory and common law rights as guaranteed by the laws and Constitution of the State of New York, and as defendant CITY OF NEW YORK is the employer of defendants, WILLIE MOREE, MICHAEL LANGELLA, KEVIN BRADY, CHRISTOPHER KILLEN, ANTHONY PASQUARIELLO, MATTHEW HALL and ELMER LOPEZ, the CITY OF NEW YORK is liable to plaintiff for negligent hiring, screening, retention, supervision and training.

91.   As a result of the foregoing, plaintiff was deprived of liberty, was subject to great humiliation, and was otherwise

harmed, damaged, and injured, all to his damage in the amount of Ten Million ($10,000,000.00) Dollars.

## PUNITIVE DAMAGES CLAIM

92.   As a result of the extreme, wanton, and outrageous nature of the conduct of the defendants, WILLIE MOREE, MICHAEL LANGELLA, KEVIN BRADY, CHRISTOPHER KILLEN, ANTHONY PASQUARIELLO, MATTHEW HALL and ELMER LOPEZ, in, among other things, arresting the plaintiff without cause or reason and maliciously prosecuting plaintiff, the plaintiff is entitled to punitive damages in the amount of Five Million ($5,000,000.00) Dollars.

## RESPONDEAT SUPEREOR LIABILITY

93.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "92" with the same force and effect as if fully set forth herein.

94.   At all times relevant herein, the defendants, WILLIE MOREE, MICHAEL LANGELLA, KEVIN BRADY, CHRISTOPHER KILLEN, ANTHONY PASQUARIELLO, MATTHEW HALL and ELMER LOPEZ, were acting within the scope of their employment as officers and agents of the New York City Police Department.

95.   The CITY OF NEW YORK is liable for compensatory and exemplary damages under the doctrine of respondeat supereor or is liable to indemnify the individual defendants pursuant to provisions of the General Municipal Law for the tortious and unlawful acts of defendants WILLIE MOREE, MICHAEL LANGELLA, KEVIN

BRADY, CHRISTOPHER KILLEN, ANTHONY PASQUARIELLO, MATTHEW HALL and ELMER LOPEZ, committed within the scope of their employment.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

A. In favor of plaintiff for appropriate compensatory damages on plaintiff's federal claims;

B. In favor of plaintiff for Ten Million Dollars on his Pendent Malicious Prosecution Claim;

C. Awarding plaintiff punitive damages against defendants WILLIE MOREE, MICHAEL LANGELLA, KEVIN BRADY, CHRISTOPHER KILLEN, ANTHONY PASQUARIELLO, MATTHEW HALL and ELMER LOPEZ  in the amount of Five Million ($5,000,000.00) Dollars;

D. Pursuant to 42 U.S.C. § 1988 awarding plaintiff the reasonable attorney's fees, interest, costs and disbursements of this action; and

E. Granting such other and further relief as this court deems just and proper.

<u>JURY DEMAND</u>

Plaintiff demands a trial by jury.

Dated:    New York, New York
          March 31, 2015

                              ROTHMAN, SCHNEIDER,
                                 SOLOWAY & STERN, LLP
                              Attorneys for Plaintiff
                              100 Lafayette Street
                              New York, New York 10013
                              (212) 571-5500

                              By:_____
                                 ROBERT A. SOLOWAY

21